Affirmed and Memorandum Opinion filed February 28, 2005









Affirmed
and Memorandum Opinion filed February 28, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00342-CR

____________

 

JAMES PATRICK
PREYEAR,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 184th
District Court`

Harris County, Texas

Trial Court Cause No. 982,437

 



 

M E M O R A N D U M   O P I N I O N








A jury found appellant James Patrick
Preyear guilty of possession with intent to deliver a controlled substance,
namely at least 400 grams of cocaine, and assessed his punishment at twenty-two
years= confinement in
the Institutional Division of the Texas Department of Criminal Justice and a
$3,000 fine.  On appeal, appellant
contends (1) the evidence is legally insufficient to establish that he
intentionally and knowingly possessed the cocaine found in the automobile he
was driving; (2) the trial court erred by denying his motion to suppress
because the officers lacked probable cause to stop or search him; and (3) the
trial court erred by overruling his objection to a police officer=s testimony that
the drugs would have a devastating effect on a small community.  We affirm.

Factual Background

In March of 2004, Detective Frank
Fullbright began investigating appellant, who resided in Alabama, after
learning he had checked into a local motel. 
Detective Fullbright had extensive experience in the area of narcotics,
and he apparently was familiar with appellant. 
On the morning of March 25, Detective Fullbright, with the assistance of
other police officers, began conducting undercover surveillance on two
side-by-side rooms occupied by appellant, Lloyd McMillian, and two
females.  

During the day, Fullbright watched the
subjects of the surveillance go back and forth between the two rooms
periodically and run errands in a 1999 Ford Expedition with an Alabama license
plate.  At some point that afternoon,
Fullbright saw McMillian remove from the Expedition a purple Crown Royal
bag.  Because of the bag=s appearance,
Fullbright suspected it did not contain a bottle of Crown Royal, but instead
contained bundles of money.  McMillian
took the bag into one of the motel rooms, where he was joined by appellant and
the females. 

Later that evening, the group left the
motel room and got in the Expedition to go to a Chinese restaurant.  McMillian was carrying the Crown Royal bag
and put it in the back of the Expedition. 
Shortly after the group arrived at the restaurant and began to eat, two
unknown males drove into the restaurant=s parking lot in a
black Toyota.  The black male driver of
the Toyota got out of the car and began walking toward the restaurant while
talking on a cell phone.  Appellant and
McMillian walked out to meet him, and the three talked for a while in the
parking lot before getting in the Expedition. 
After a few minutes, the unknown male returned to the Toyota and
appellant and McMillian went back into the restaurant.  Appellant, McMillian, and the females then
left in the Expedition with the Toyota following them back to the motel.








Once at the motel, appellant, McMillian,
and the unknown male went into one of the rooms.  McMillian was carrying the still full-looking
Crown Royal bag as he went into the room.[1]  After a few minutes, the unknown male came
out of the room carrying the Crown Royal bag, and drove away.  Within two hours, the unknown male returned
with the Crown Royal bag, which now appeared empty.  He went in one of the rooms, and after a few
minutes, he left without the Crown Royal bag. 


Shortly after midnight on March 26,
Fullbright watched as appellant and McMillian got in the Expedition and went to
a nearby Gerland=s supermarket where they purchased some
items.[2]  They then returned to the motel room carrying
the Gerland=s bag. 
A little later, the unknown male in the Toyota returned to the
motel.  He retrieved a grocery bag from
the trunk and took it to appellant=s room.  To Fullbright, the bag appeared to have Akilogram-shaped
bundles in it.@ 
The unknown male stayed in the room for about an hour and a half before
leaving.  A few minutes after he left,
appellant and McMillian came out of the room carrying a covered box or tray,
and appellant tossed a grocery bag into a trash can outside. 








Appellant and McMillian took the covered
box or tray over to the Expedition, and appellant got in the driver=s side of the
vehicle while McMillian opened the rear passenger side door and leaned into the
vehicle.  Appellant appeared to be Adoing something
with the dashboard.@ 
After a few minutes, they both got in the car and moved to the back
parking lot, where it was very dark. After a few more minutes, the Expedition
returned to where it was originally parked, and both men returned to the
rooms.  At about 2:30 a.m., appellant and
McMillian came back down and, with appellant driving, went to a car wash and Asprayed scent all
in the car,@ but did not get the car washed.  They then returned to their motel rooms
around 3:00 a.m.  At trial, Fullbright
testified that, based on his training and experience, his observations of
appellant=s and McMillian=s actions led him
to conclude that they had Amade a normal dope
deal.@  

Around 11:30 a.m., appellant, McMillian,
and the two females got in the Expedition, and, with appellant driving, left
the motel.  Detective Fullbright alerted
other officers on the surveillance team of the group=s actions, and
they began to follow the group in the Expedition.  At some point, a  patrol officer in a marked police car pulled
over appellant for the traffic offense of following too closely.  Fullbright arrived and asked appellant for
consent to search the Expedition, but appellant refused.  Fullbright then called for a K-9 unit. With
everyone out of the Expedition, the K-9 dog sniffed around the exterior of the
vehicle and Aalerted@ to the odor of
narcotics at the back of the vehicle. 
The officers then searched the Expedition and found a small amount of
marijuana scattered on the floorboard. 
Appellant and McMillian then were arrested for possession of the
marijuana. 

Police took the Expedition to a Houston
Police Department garage, where they searched it more thoroughly but found no
other contraband.  Believing there were
drugs somewhere in the vehicle, Detective Fullbright had it transported to an
auto body shop, where technicians disassembled the dash and found four bundles
of cocaine, totaling 718.6 grams, and two bundles of ecstacy tablets,
containing a total of 1,090 tablets.[3]  The cocaine and the ecstacy had been wrapped
in Saran Wrap and sealed with electrical tape, and placed in the air
conditioning ducts behind the dash. 
Appellant and McMillian were then arrested for possession of cocaine
with intent to distribute an amount over 400 grams.








At trial, Detective Fullbright testified
that, after appellant and McMillian were first arrested, he returned to the
motel and found the grocery bag appellant had thrown in the trash as he and
McMillian carried the covered box or tray to the Expedition.  Inside the bag were packages of electrical
tape, a Saran Wrap box, and plastic wrappings containing chunks of what was
later found to be cocaine.  Detective
Fullbright testified that the Saran Wrap and electrical tape recovered from the
trash can was consistent with that used to package the cocaine and the ecstacy
found in the Expedition.  Later in the
trial, a Houston Police Department fingerprint identification expert compared a
fingerprint he took from appellant to a latent print found on the Saran Wrap
box, and testified that both fingerprints belonged to appellant. 

I.        The
Evidence is Legally Sufficient to Show Affirmative Links Supporting Appellant=s Conviction

In his first point of error, appellant
contends Athe evidence was legally insufficient to
establish the essential element that appellant intentionally and knowingly
possessed the cocaine found in the automobile.@[4]  In conducting a legal sufficiency review, we
view the evidence in the light most favorable to the verdict and ask whether
any rational trier of fact could find the essential elements of the crime
beyond a reasonable doubt.  Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  We evaluate all the evidence in the record,
whether admissible or inadmissible.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).








In this case, the State was required to
prove beyond a reasonable doubt that appellant knowingly possessed with intent
to deliver a controlled substance, namely cocaine, in an amount of 400 grams or
more.  See Tex. Health & Safety Code ' 481.112(a),
(f).  If an accused does not have
exclusive possession of the place where the controlled substance is found, the
State must affirmatively link the accused to the contraband.  Poindexter v. State, 153 S.W.3d 402,
406 (Tex. Crim. App. 2005).  The
affirmative links can be established by showing additional facts and
circumstances that raise a reasonable inference of the accused=s knowledge and
control of the contraband.  Villegas
v. State, 871 S.W.2d 894, 896 (Tex. App.CHouston [1st
Dist.] 1994, pet. ref=d). 
This evidence may be direct or circumstantial.  Brown v. State, 911 S.W.2d 744, 747 (Tex.
Crim. App. 1995). 

In determining if sufficient affirmative
links exist, we can examine such circumstantial factors as the amount of
contraband found, its location in relationship to the defendant=s personal
belongings, the defendant=s relationship to other persons with
access to the premises, incriminating statements, and proximity of the
defendant to the contraband.  Id.  Other significant factors include whether the
accused owned, rented, or controlled the place where the police found the
contraband; whether the defendant had convenient access to the contraband;
whether the police found the contraband in plain view or in areas private to
the accused; whether the defendant was the driver of the automobile in which
the contraband was found; whether the place where the contraband was found was
enclosed; and whether paraphernalia to use the contraband was in view of or
found on the accused.  Id. at
897.  The number of factors present is
not as important as the logical force the factors have in establishing the
elements of the offense.  Gilbert v.
State, 874 S.W.2d 290, 298 (Tex. App.CHouston [1st
Dist.] 1994, pet. ref=d).








Here, we find numerous significant factors
affirmatively linking appellant to the cocaine found in the vehicle.  As detailed above, Detective Fullbright
observed appellant over a period of time engaging in conduct consistent with
buying and possessing illegal drugs. 
Based on his testimony, a rational jury could infer that appellant and
McMillian exchanged money for contraband, concealed the contraband in the
vehicle, and sprayed scent in the vehicle to mask any odor of the
contraband.  Other significant factors
include the following:  (1) appellant was
the driver of the vehicle in which the cocaine was found; (2) the quantity of
cocaine was large; (3) the cocaine was discovered in an enclosed area behind
the dashboard of the vehicle; (4) the cocaine was found along with a large
quantity of ecstacy tablets; (5) the cocaine was packaged with electrical tape
and plastic wrap consistent with the tape and Saran Wrap packaging found in a
grocery store bag appellant was seen throwing away; and (6) the Saran Wrap box
had appellant=s fingerprint on it. 

Upon thorough review of the record and in
the light most favorable to the verdict, we find the evidence is legally
sufficient to enable a rational trier of fact to find appellant guilty beyond a
reasonable doubt.   

II.       The
Motion to Suppress

In his second point of error, appellant
contends the trial court erred in denying his motion to suppress because the
officers lacked probable cause to stop or search him.  The State responds that appellant has inadequately
briefed this point of error and has waived any error as to the admission of the
illegal drugs found in the Expedition. 
As we explain below, we agree with the State.

In appellant=s brief, he
mentions the dog alert and the alleged traffic violation of following too
closely, but his main argument seems to be that the surveillance of him and his
friends Adid not reveal a
single illegal act@ by any of them, so probable cause was not
established to stop or search the vehicle. 
However, appellant does not identify what evidence he contends should
have been suppressed or upon what legal grounds that evidence should have been
suppressed.  In Brennan v. State,
this Court explained that, when deciding whether to address the merits of an
appeal of a denial of a motion to suppress, the appellate court must first
identify the evidence, or Afruits,@ of the allegedly
unlawful seizure that the trial court held would not be suppressed.  140 S.W.3d 779, 781 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d). 
If it is not clear from the testimony and exhibits what the fruits are,
then the appellate court need not address the merits of the claim.  Id. 
Moreover, an assertion that the fruits of the illegal seizure are Aobvious@ and Acan easily and
unmistakably be ascertained by the reviewing the record@ is
insufficient.  See id.  Thus, this court held that the appellant
presented nothing for review because his points of error challenging the denial
of his motion to suppress failed to identify what, if any, evidence that was
ruled upon by the denial.  Id. 








Appellant=s written motion
requested suppression of the ecstasy, cocaine, marijuana, and A[a]ll statements
made . . . and such other actions@ of appellant at
the time of and after the stop, arrest, and search based on several state and
federal constitutional grounds. Although the motion suggests appellant was
attempting to suppress specific evidence, he does not identify any evidence
that he claims should have been suppressed in either his brief or in the
hearing on the motion below.  As noted in
Brennan, it is not this court=s role to develop
appellant=s issues for him.  Id. 
Because appellant fails to identify what evidence he contends was
erroneously suppressed, he presents nothing for our review.  Id. 

But, even if we were to ascertain exactly
what evidence appellant contends was erroneously suppressed, it is also unclear
what appellant is contesting and upon what legal theory he relies.  Appellant merely asserts in a conclusory
fashion that the officers lacked probable cause, and sets out several cases
involving various search and seizure issues. 
He makes no attempt to apply the cases he cites to the facts of this
case, and it is impossible to ascertain whether he is contesting the initial
stop for the alleged traffic violation, the existence of reasonable suspicion
to stop or detain appellant, the length of appellant=s detention, the
use of the K-9 dog, the search of the vehicle either at the time of the stop or
thereafter, the impounding of the vehicle, the seizure of the illegal drugs, or
something else.  In the absence of relevant
citations to the record, reasonably cogent arguments, or any legal analysis, we
must conclude that appellant has failed to adequately brief this point of
error.  See Tex. R. App. P. 38.1(h); Bell v.
State, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002) (overruling appellant=s point of error
when appellant offered only conclusory argument and failed to cite to record or
provide any legal analysis to support claim that trial court violated
constitutional rights).








Additionally, appellant failed to preserve
any error in the admission of the illegal drugs found in the Expedition because
he affirmatively asserted that he had Ano objection@ to the admission
of this evidence when the State offered it. 
See Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988)
(holding that when accused affirmatively asserts during trial that he has Ano objection@ to the admission
of the complained-of evidence, he waives any error in its admission despite the
pretrial ruling).

We therefore overrule appellant=s second issue.

III.      The
Officer=s Testimony 

In his third issue, appellant contends the
trial court erred by overruling appellant=s objection to a
police officer=s testimony that the drugs would have a
devastating effect on a small community. 
Appellant contends the trial court=s Afailure to act on
a proper objection@ to a Aflagrant example
of prosecutorial misconduct@ denied him a fair
trial and therefore his right to due process. 
He also argues the testimony was highly prejudicial and inflammatory,
and could not have been appropriate victim impact testimony.

At the punishment hearing, the prosecutor
asked Detective Fullbright about the effect of the amount of drugs recovered Aon the street level.@  Appellant=s counsel objected
to the question as calling for speculation, because the witness was not a
psychologist or drug expert.  The trial
court overruled this objection after the State asserted the witness had been
proven up as a narcotics expert. 
Detective Fullbright then answered that it would A[b]e devastating
to a small community.@

As the record shows, appellant objected to
the testimony on one ground, speculation. 
On appeal, however, he asserts numerous different grounds not raised
below.  To preserve error for appellate
review, a defendant must make a specific objection in the trial court.  Tex.
R. App. P. 33.1(a); Wilson v. State, 71 S.W.3d 346, 349 (Tex.
Crim. App. 2002).  The point of error on
appeal must comport with the specific objection made at trial.  Wilson, 71 S.W.3d at 349.  An objection stating one legal basis may not
be used to support a different legal basis on appeal.  Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990).  Because
appellant=s trial objection does not comport with
the issues appellant raises on appeal, he has preserved nothing for our review.  See Ibarra v. State, 11 S.W.3d 189, 197
(Tex. Crim. App. 1999); Penry v. State, 903 S.W.2d 715, 763 (Tex. Crim.
App. 1995).








We therefore overrule appellant=s third point of
error.

Conclusion

We overrule appellant=s points of error
and affirm the trial court=s judgment.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed February 28, 2006.

Panel
consists of Justices Fowler, Edelman, and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 

 

 











[1]  The two females went into the other
room.





[2]  Detective Fullbright testified that
appellant and McMillian purchased Saran Wrap and electrical tape.  Appellant=s counsel objected to the testimony and the trial court
sustained the objection.





[3]  At trial, Detective Fullbright testified that
the large quantity of the drugs indicated that they were Adefinitely@ not for personal use.  





[4]  The State
argues appellant has failed to preserve error because the point is inadequately
briefed.  See Tex. R. App. P. 38.1(h) (providing that
an appellant=s brief must contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record).  We agree that the point is
poorly presented and nearly devoid of argument. 
However, based on the wording of appellant=s point
of error as challenging the Aelement that appellant intentionally and knowingly@ possessed the cocaine, and his citations to cases
discussing Aaffirmative links,@ we
understand him to be challenging the legal sufficiency of the evidence that he
knowingly possessed the cocaine.  See
Humason v. State, 728 S.W.2d 363, 365 (Tex. Crim. App. 1987) (AConsistent with the mens rea requirement of a
possessory offense under the Controlled Substances Act, this Court has held
that the State must provide evidence of >affirmative
links= between a defendant and a controlled substance.@); Classe v. State, 840 S.W.2d 10, 12 (Tex.
App.CHouston [1st Dist.] 1992, pet. ref=d) (discussing affirmative links establishing control
and knowledge to support offense of unlawful possession of a controlled
substance).  We therefore address the
merits of this point of error.